## Chesapeake & Ohio Railway Company et al. v. Wadsworth Electric Manufacturing Company.

(Decided June 3, 1930.)

646

GALVIN & TRACY, ROUSE & PRICE and A. E. STRICKLETT for appellants.

SAWYER SMITH and ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The city of Covington in 1927 enacted an ordinance for the elimination of railway grade crossings in portions of the city. It provided for radical alterations at Eleventh street and at Robbins street, where the several tracks of the Covington & Cincinnati Elevated Railroad & Transfer & Bridge Company, the Chesapeake & Ohio Railway Company, and the Louisville & Nashville Rail-

.way Company crossed the two streets. A section of the ordinance was as follows:

> "Section 17. The cost and expense of constructing said underpasses and viaducts, and all damages, if any, that may be done to the property of any person or persons, company or companies, by reason of the construction of said underpasses and viaducts, and the approaches thereto, or by reason of the change of grade of any of the streets or avenues, or the closing of any streets, avenues or alleys herein mentioned, shall be paid for by said The Bridge Company, The Chesapeake Company or The Louisville Company, or either of them, as their interest may appear and the city relieved of all liability and responsibility."

Another section provided that the railroad companies, within thirty days after the ordinance became effective, should accept the same in writing, whereupon the ordinance should constitute and thereby become a binding contract between the city of Covington and the three railroad companies named therein. The ordinance was accepted in writing by the railroad companies within the period prescribed and became effective. Pursuant to its provisions the railroad companies made the improvements required by it. In order to do so it became necessary to change the established grades of Eleventh street and Robbins street. Joseph Feltman owned real estate abutting on Eleventh street and extending back to Robbins street and abutting thereon. The property had been leased to the Wadsworth Electric Manufacturing Company with an option to purchase the property, which option had been accepted and converted into an obligation. An action was filed by Feltman and the Wadsworth Company against the city of Covington and the three railroad companies to recover damages to the property resulting from the improvements made under the contract. A trial resulted in a judgment in favor of the plaintiffs against all the defendants for $37,500, to reverse which the railroad companies have prosecuted an appeal.

It is contended that the court should have sustained the motions of the three railroad companies for a peremptory instruction; that the court erred to the prejudice of the railroad companies in permitting the jury to be advised of the terms and provisions of section 17 of

the ordinance, which required the railroad companies to pay the damages; and that the verdict of the jury was contrary to the evidence and grossly excessive.

The argument of appellants for a peremptory instruction in favor of the three railroad companies is predicated upon the assumption that no cause of action existed in favor of the plaintiffs against the railroad companies, and that the city of Covington was the only proper or necessary defendant. The argument is deduced from the charter of the city, which vests exclusive control and power over the streets of the city, including the alteration, closing, and grading thereof, and particularly the provision of the charter which authorizes the city to direct and control the construction of all railroad tracks, bridges, and kindred matters. By way of amplification it is insisted that in the nature of things there can be no contractual relation between the citizens whose property may be injured by an improvement and the person or corporation doing the work. The contractor operates as an agency of the city, and, when the contract is performed, any trespass or injury resulting from the execution of the contract must fall upon the municipality and not upon the contractor. In contemplation of the contractual obligation of the railroad companies, derived from the ordinance, to pay the damages, it is argued that it constitutes but an indemnity agreement to reimburse the city for such expenses, and not a contract for the benefit of the injured landowners. The argument proceeds upon a misapprehension of the facts and a misapplication of the law. The petition of the plaintiffs charged that the defendants entered upon the streeets abutting on plaintiffs' property, elevated and changed the established grade, and jointly did all the things enumerated in setting out the facts constituting the cause of damage and the source of the liability. The defendants were the city and the three railroad companies. The answer did not deny those allegations of the petition, but denied merely that any injury had resulted from the operations or that any damage had been caused. According to the allegations of the petition the city and the railroad corporations were jointly liable, and could be jointly sued whether that liability was based upon the contract or section 242 of the Constitution which requires compensation to be made for property taken for public use. But if it be assumed that the contract was performed by the contractor in accordance with the plans

and specifications of the city, and that no liability for consequential injuries rested upon the railroad companies because of that fact (Hunt-Forbes Construction Co. v. Robinson, 227 Ky. 138, 12 S. W. (2d) 303), yet, where the property of the abutting owner is actually taken for public use, both the municipality and the contractor are liable to the injured party. Terhune v. Gorham, 225 Ky. 249, 8 S. W. (2d) 431; Black Mountain Corp. v. Houston, 211 Ky. 621, 277 S. W. 993. But these questions are academic so far as this case is concerned because of the agreement of the appellants, not to indemnify the city against such damages as it might have to pay, but to pay all damages for which the city may be legally liable to the abutting property owners resulting from the erection of the viaducts, or from substantial changes in the established grades of the streets involved.

The principle prevailing in this state is that one for whose benefit a contract is made may maintain an action thereon, although a stranger to the consideration; and a contract is made for the benefit of a party who has a direct financial, legal, or equitable interest in its performance. 13 C. J. p. 707, sec. 816; Hall v. Alford, 105 Ky. 666, 49 S. W. 444, 20 Ky. Law Rep. 1482; Louisville & N. R. Co. v. Schmidt, 112 Ky. 717, 66 S. W. 629, 23 Ky. Law Rep. 2097; Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 11 Ky. Law Rep. 738, 7 L. R. A. 77, 25 Am. St. Rep. 536; Graves County Water Co. v. Ligon, 112 Ky. 775, 66 S. W. 725, 23 Ky. Law Rep. 2149; Kenton Water Co. v. Glenn, 141 Ky. 531, 133 S. W. 573; Blakeley v. Adams, 113 Ky. 396, 68 S. W. 393, 24 Ky. Law Rep. 263; First National Bank v. Doherty, 156 Ky. 391, 161 S. W. 211; Louisville Gas & Electric Co. v. City of Louisville, 191 Ky. 796, 231 S. W. 918. The principle is also applied in the cases which permit laborers or materialmen to sue the sureties in a contractor's bond. Citizens' Trust & Guaranty Co. v. Peebles Paving Brick Co., 174 Ky. 439, 192 S. W. 508; Federal Union Surety Co. v. Commonwealth, 139 Ky. 92, 129 S. W. 335; Morrison v. Payton, 104 S. W. 685, 31 Ky. Law Rep. 992. In cases of that character a provision in a surety bond, to the effect that the contractor will pay for labor performed and material furnished, is construed to be for the benefit of the laborers and materialmen. Mid-Continent Petroleum Co. v. Southern Security Co., 225 Ky. 501, 9 S. W. (2d) 229;

National Surety Co. v. Daviess County Planing Mill Co., 213 Ky. 670, 281 S. W. 791. Appellants rely upon the cases of Fidelity & Casualty Co. v. Martin, 163 Ky. 12, 173 S. W. 307, L. R. A. 1917F, 924, and New York Indemnity Co. v. Ewen, 221 Ky. 114, 298 S. W. 182. Both actions were upon insurance policies to which the plaintiffs were strangers and which contained no provisions for their benefit. In the Martin case the contract was purely one of indemnity for loss upon which no liability arose until the insured had been compelled to pay damages. In the Ewen case the policy provided that no action could be maintained upon the insurance policy until the principal had been prosecuted to insolvency. An action upon the same insurance policy after the principal had been prosecuted to insolvency was permitted to be maintained by the injured person. Mealy v. Ewen, second appeal, 225 Ky. 117, 7 S. W. (2d) 823.

Section 242 of the Constitution provides that municipal and other corporations and individuals invested with the privilege of taking property for public use shall make just compensation for property taken, injured, or destroyed by them. The provision means that damages may be demanded from all such corporations participating in the taking, and that the injured party is not required to look to one of them. It is true that in the case of Pearson v. Zable, 78 Ky. 170, it was held that a petition which failed to allege that the contractors did not grade the street in all respects as provided in the contract failed to state a cause of action, since it was the duty of the city to provide plans for the work and to provide against injury to property. But that case was decided under the Constitution of 1850, and after the adoption of the present Constitution the court said: "If Larue county could not, without liability to the owner for damages, do the work in question so as to injure the plaintiff's premises, it must follow that it could not authorize another to do it with immunity. . . . 'The agent cannot avert legal responsibility for his own wrongful act by pleading that he was employed or directed by a person who had no lawful authority.'" Layman v. Beeler, 113 Ky. 221, 67 S. W. 995, 996, 24 Ky. Law Rep. 174; City of Henderson v. McClain, 102 Ky. 402, 43 S. W. 700, 19 Ky. Law Rep. 1450, 39 L. R. A. 349; Yates v. Big Sandy R. R. Co., 89 S. W. 108, 28 Ky. Law Rep. 206; Pickerill v. City of Louisville et al., 125

Ky. 213, 100 S. W. 873, 30 Ky. Law Rep. 1239. In Louis-
ville Railway Co. v. Foster, 108 Ky. 743, 57 S. W. 480,
22 Ky. Law Rep. 458, 50 L. R. A. 813, a street railway
operating under legislative municipal authority was held
liable, under section 242 of the Constitution, for damages
to abutting property.

It is a settled principle in this state that authority
granted to a railroad corporation to use a street does
not authorize a disregard of the property rights of others
or give immunity for their invasion. Willis v. K. & I.
Bridge Co., 104 Ky. 186, 46 S. W. 488, 20 Ky. Law Rep.
475. Indeed, a city is not empowered to confer upon cor-
porations any right in the streets to the entire exclusion
of the public, and such an attempted grant is no protec-
tion against one who sues for an injury to his property.
Stein v. C. & O. Ry. Co., 132 Ky. 322, 116 S. W. 733;
Wickliffe v. Ill. Cent. R. Co., 108 S. W. 243, 32 Ky. Law
Rep. 1159; Commonwealth v. City of Frankfort, 92 Ky.
149, 17 S. W. 287, 13 Ky. Law Rep. 705; Louisville & N.
R. Co. v. Whitley County Court, 95 Ky. 215, 24 S. W.
604, 15 Ky. Law Rep. 734, 44 Am. St. Rep. 220. It is
argued, however, that section 17 of the ordinance per-
mitted an apportionment of the damages among the rail-
road companies according to their respective interests in
the improvement, and that each was liable only to the
extent of benefits received. The obligation of the ordi-
nance is that the damages shall be paid by the three rail-
road companies, or either of them, as their interest may
appear, but such a provision does not protect any of
them from liability to the property owner. It is the com-
munity of interest and concert of action, not the extent
of it, that fixes the liability of each railroad for the entire
damages. It follows that the appellants were not entitled
to a peremptory instruction in this case, and that no
error was committed in permitting the entire ordinance
to be read to the jury.

What has been said already disposes of the com-
plaint of the railroad companies that they were prej-
udiced by the opening statement of counsel for plaintiffs
in reading section 17 of the ordinance to the jury.

It is insisted, finally, that the amount of damages
allowed by the jury was grossly excessive. A solution
of that question depends upon the evidence. It appears
that the land had been purchased for $16,000. An old
building was removed and a modern new building

erected. The lease from Feltman to the Wadsworth Electric Manufacturing Company contained an option of purchase of the entire property for $130,000, and the lessee had obligated itself to exercise the option before the lease expired. The property had been listed for taxation at $60,000. A number of expert witnesses testified for the railroad companies and placed the damage to the property around $15,000, some of them fixing it higher and some lower. The consensus of opinion was that the property was damaged 10 per cent. of its value and the differences in the estimates resulted from a difference in the estimates of value. There was a wide divergence of opinion among all the witnesses as to the valuation of the property and as to the estimated depreciation in value, but all agree that the property was substantially injured by the changes occasioned by the improvement. The witnesses for the plaintiff estimated the value of the property much higher than the witnesses for the defendants, and also estimated the damages at a much larger percentage of the value. There was substantial evidence showing a much greater damage than that fixed by the jury. The average opinion of the witnesses for the plaintiff fixed the damage to the property at a sum in excess of $100,000. In such cases the finding of damages is for the jury, and, when there is evidence which justifies the verdict, we cannot revise the result reached by that tribunal. Sandy Valley & Elkhorn R. Co. v. Bentley, 161 Ky. 555, 171 S. W. 178. It is argued, however, that the photographs taken before and after the completion of the improvement enables the court to visualize the situation and say as a matter of law that the valuation of the witnesses and the verdict of the jury were excessive. The photographs illustrate the nature and extent of the interference with the access to the property, but they shed no light on the value of the property or the amount of damage. Those were questions for the jury within the limits of the proof, and we have no authority to interfere with the verdict of a jury when there was no error of law affecting the substantial rights of the appellant. Lexington & Eastern R. Co. v. Sumner, 196 Ky. 788, 245 S. W. 849; Long Fork R. Co. v. Sizemore, 184 Ky. 57, 211 S. W. 193; Louisville & N. R. Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983.

The judgment is affirmed.